# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CARL REITHER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.  1:23-cv-01333-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT AND CLOSE THIS ACTION<br><br>(ECF Nos. 15, 17, 18) |

## I.

## INTRODUCTION

Jason Carl Reither ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the Administrative Law Judge's ("ALJ") decision is unsupported by substantial evidence because she failed to find Plaintiff's mental impairments severe at Step 2 and did not include any mental limitations in the residual functional capacity ("RFC") assessment; and the ALJ failed to

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 7, 9, 10.)

1

1  provide any reason to reject Plaintiff's symptom complaints and did not include any work-related

2  limitations consistent with the nature and intensity of Plaintiff's limitations.[2]  (Pl.'s Mot. for Summary

3  Judgment ("Mot.") 3,[3] ECF No. 15.)

4       For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

5                                         **II.**

6                                  **BACKGROUND**

7       **A.      Procedural History**

8       Plaintiff had previously applied for an application for a period of disability and disability

9  insurance benefits and an application for supplemental security income on January 30, 2014.  (AR

10  105.)  On December 14, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

11  (AR 102-14.)

12       Plaintiff protectively filed an application for supplemental security income on August 10,

13  2020.  (AR 139.)  Plaintiff's application was initially denied on February 19, 2021, and denied upon

14  reconsideration on May 13, 2021.  (AR 161-65, 168-72.)  Plaintiff requested and received a hearing

15  before Administrative Law Judge Deborah J. Van Vleck ("the ALJ").  Plaintiff appeared for a

16  telephonic hearing on May 16, 2022.  (AR 73-101.)  On May 31, 2022, the ALJ issued a decision

17  finding that Plaintiff was not disabled.  (AR 34-54.)  On March 23, 2023, the Appeals Council

18  denied Plaintiff's request for review.  (AR 5-7.)

19       **B.      The ALJ's Findings of Fact and Conclusions of Law**

20       The ALJ made the following findings of fact and conclusions of law as of the date of the

21  decision, May 31, 2022:

22       1.  Plaintiff has not engaged in substantial gainful activity since August 10, 2020, the

23           application date.

24  _____

25  [2] The Court notes that Plaintiff's notice of motion references a different appellant, Jose Gambino Menchaca.  (ECF No.
    15 at 1.)  However, on review of Plaintiff's motion for summary judgment, while there are some inconsistencies with

26  the record, the motion does address the instant decision issued May 31, 2022, and the Court finds that these are
    typographical errors or failures to update a prior motion by counsel which do not affect the substance of the motion.

27
    [3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the

28  CM/ECF electronic court docketing system.

2. Plaintiff has the following severe impairments: a combination of physical impairments that include morbid obesity, aggravating history of congenital septal defect status-post repair, methamphetamine induced cardiomyopathy with congestive heart failure, status-post cervical fusion, and laminectomy in 2004, chronic lumbago, and hypertension.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4. After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR § 416.967(a) except occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; never crawling; never work in the presence of unprotected heights or hazardous machinery; never work in the presence of concentrated exposure to humidity and wetness; never work in the presence of concentrated exposure to dust, odors, fumes, and pulmonary irritants; and never work in the presence of concentrated exposure to extreme cold, extreme heat, or vibration.

5. Plaintiff is unable to perform any past relevant work.

6. Plaintiff was 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7. Plaintiff has at least a high school education.

8. Transferability of job skills is not an issue in this case Plaintiff's past relevant work is unskilled.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since August 10, 2020, the date the application was filed.

(AR 41-53.)

///

**III.**

**LEGAL STANDARD**

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Supplemental Social Security benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

## B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  *See* *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also* *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also* *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also* *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

///

# IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred by failing to find his mental impairments severe at step 2 and not including limitations in his RFC and by failing to provide clear and convincing reasons to discredit his symptom testimony.

### A.     Whether the ALJ Erred by Failing to Include Limitations Related to Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred by failing to find his mental impairments severe at step 2 and not including any limitation in the RFC to reflect his mental impairments.  (Pl.'s Motion Summary Judgment ("Mot.") 5, ECF No. 15.)  Plaintiff contends that the ALJ erroneously found his mental impairments non-severe at step 2 and dismissed Dr. Seward's opinion as inconsistent with the non-examining agency psychological consultants who determined that Plaintiff's mental impairments were non-severe due to <u>Chavez</u>.[7]  Plaintiff argues that the regulations require the ALJ to consider and address medical source opinions and if the RFC conflicts with the opinion to explain why the opinion was not adopted.  (<u>Id.</u> at 6.)  Plaintiff asserts that the ALJ's entire discussion of Dr. Seward's opinion was three sentences and the ALJ failed to draw any connection between the evidence and his conclusion.  Plaintiff argues that the ALJ failed to note that mild tremors, shaky speech, and an anxious mood and affect were supportive of Dr. Steward's opinion.  Further, Plaintiff contends that the ALJ failed to acknowledge that the agency physicians improperly applied <u>Chavez</u> in their determination which is incongruous with the ALJ's determination that <u>Chavez</u> did not apply.

---

[7] A prior decision by an ALJ for which the Appeals counsel denied review is final and binding.  20 C.F.R. ¶ 404.905; <u>Chavez v. Bowen</u>, 8444 F.2d 691, 692 (1988).  The doctrine of *res judicata* applies in administrative proceedings, although it is less rigidly applied to administrative proceedings.  <u>Chavez</u>, 844 F.2d at 693.  The Ninth Circuit has held that a finding that the claimant is not disabled creates a presumption that the claimant continues to be able to work after that date.  <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1995).  The prior finding that the claimant was not disabled cannot be re-litigated through date of the prior decision.  <u>Giancola v. Colvin</u>, 31 F.Supp.3d 1215, 1220-21 (E.D. Wash. 2014).  "[I]n order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, [a claimant] must prove 'changed circumstances' indicating a greater disability."  <u>Chavez</u>, 844 F.2d at 693 (quoting <u>Taylor v. Heckler</u>, 765 F.2d 872, 875 (9th Cir.1985)).  This can be done by showing a worsening of symptoms or other changes such as the existence of a new impairment not considered in the previous application or a change in the claimant's age category.  <u>Lester</u>, 81 F.3d at 827.  The burden of proof is on the claimant to show that he is disabled and on a subsequent application for benefits the claimant has the burden of rebutting the presumption of continuing nondisability.  <u>Lyle v. Secretary of Health and Human Services</u>, 700 F.2d 566, 568 (9th Cir. 1983).

(Id. at 7.)  Plaintiff argues that the error is not harmless as the vocational expert was not questioned on the existence of work in the national economy with mental limitations and therefore the step 5 determination cannot be found to be supported by substantial evidence and remand is required.  (Id. at 7-8.)

Defendant counters that the ALJ found Plaintiff's major depressive disorder and generalized anxiety disorder in the setting of stimulant and alcohol dependence were medically determinable, but non-severe, by analyzing the four broad areas of mental functioning.  (Def.'s Responsive Brief ("Opp.") 3, ECF No. 17.)  Defendant argues that the ALJ's finding was reasonable because Plaintiff did not allege, nor did the objective medical evidence, suggest greater limitations.  Defendant contends that despite Dr. Seward noting that Plaintiff was anxious, his speech was shaky, and he displayed mild tremors throughout the interview, the mental status examination was otherwise normal, and Dr. Seward noted that Plaintiff had mild to marked mental limitations.  (Id. at 4.) Defendant asserts that the ALJ found the opinion unpersuasive because it was not supported by his examination and was also inconsistent with the prior administrative findings which assessed no more than mild mental limitations.  (Id. at 4-5.)  Defendant argues that substantial evidence supports the ALJ's evaluation and while Plaintiff disputes the ALJ's reasoning, his arguments are not persuasive.  Defendant asserts that the ALJ identified the evidence she relied on, which was largely unremarkable, and concluded that the unremarkable evidence meant that Dr. Seward's opinion was not supported.  (Id. at 5.)  Further, Defendant asserts that Plaintiff is incorrect in arguing that the ALJ could not rely on the prior administrative findings, but the state agency consultants based their assessments on the medical evidence, not on Chavez.  Defendant argues that Dr. Franco found that her review of the evidence led her to conclude that Chavez applied, not that Chavez required her to interpret the evidence in a certain way; and on reconsideration, Dr. Khan reached the same conclusion.  Defendant argues that since Plaintiff disclaimed any difficulty with concentration, attention, or getting along with others, it was reasonable for the ALJ to discount Dr. Seward's opinion and find Plaintiff's mental impairments non-severe.  (Id. at 6.)

Plaintiff replies that Defendant mischaracterized his arguments, relied on post hoc rationalizations, and misapplies the prevailing legal standards.  (Pl.'s Reply ("Reply") 2, ECF No.

18.)  Plaintiff contends that Defendant ignores the crux of his argument that the ALJ was erroneous in finding that his mental impairments were not severe at step 2.  Plaintiff argues that Defendant eradicates the ALJ's duty to explain the assessment of a medical opinion by asserting that the assessment of Dr. Seward's opinion was proper under the new regulations.  Plaintiff further argues that the standard required for step 2 is *de minimus* and he must only show that an impairment would impact the ability to perform work like functions.  (Id.)

     1.    <u>Legal Standard</u>

  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['s] ability to work.' "  <u>Smolen</u>, 80 F.3d at 1290 (citations omitted).  Step two is a "*de minimis* screening devise to dispose of groundless claims.*"*  <u>Id.</u>  An ALJ can only find that claimant's impairments or combination of impairments are not severe when his conclusion is clearly established by medical evidence.  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28).  In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity.  <u>Smolen</u>, 80 F.3d at 1290.

  Symptoms are not medically determinable physical impairments and cannot by themselves establish the existence of an impairment.  Titles II & XVI: <u>Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations</u>, SSR 96-4P (S.S.A. July 2, 1996).  In order to find a claimant disabled, there must be medical signs and laboratory findings demonstrating the existence of a medically determinable ailment.  <u>Id.</u>  "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings .... In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process."  <u>Id.</u>

*///*

1     2.   <u>Discussion</u>

2     The ALJ found that while Plaintiff's mental impairments were still non-severe, the new

3  listings required further evaluation.  (AR 41.)

4     **a.  Evaluation of the four functional areas**

5     The ALJ went on to find that Plaintiff's 'medically determinable mental impairments of

6  major depressive disorder and generalized anxiety in the setting of stimulant and alcohol

7  dependence, considered singly and in combination, do not cause more than minimal limitation in

8  the claimant's ability to perform basic mental work activities and are therefore non severe." (AR

9  42.)  In so finding, the ALJ considered the four broad areas of mental functioning set out in the

10  disability regulations for evaluating mental disorders.

11     The first functional area considered was understanding, remembering, or applying

12  information.  In this area, the ALJ found that Plaintiff has mild limitation.  In an adult function

13  report dated May 10, 2021, Plaintiff reported that he needed special reminders to take his

14  medication.  (AR 42, 330.)  However, a consultative examination on October 30, 2020, showed

15  adequate memory, adequate fund of knowledge, intact intelligence, intact calculations, and intact

16  insight and judgment.  (AR 42, 688.)  Additionally, the ALJ considered that Plaintiff reported he

17  was able to manage his own finances.  (AR 42, 332.)

18     The ALJ next considered the functional area of interacting with others and found that

19  Plaintiff has no limitation in this area.  (AR 42.)  The ALJ noted that on March 17, 2020; and July

20  20, 2020; mental status examination showed normal mood and affect, and cooperative behavior.

21  (AR 42, 437, 442, 512, 578, 657.)  At the October 30, 2020, consultative examination, Plaintiff

22  showed an anxious mood and affect, but had a cooperative attitude, and good eye contact. (AR 42,

23  688.)  Plaintiff also reported he was able to use public transportation and shop in stores.  (AR 42,

24  322.)   Further, the ALJ noted that Plaintiff reported no significant difficulties with supervisors,

25  coworkers, and/or the general public while working.  (AR 42, 687.)

26     The ALJ went on to consider the third functional area of concentrating, persisting, or

27  maintaining pace, and found that in this area, Plaintiff has a mild limitation.  (AR 42.)  Plaintiff

28  reported he could pay attention depending on the task.  (AR 42, 331.)  He also reported he was able

1   to finish what he starts but it may take two and a half to three times longer.  (AR 42, 331.)  The

2   consultative examination showed adequate attention and concentration, intact linear and logical

3   thought process, and unremarkable thought content.  (AR 42, 688, 689.)  Further, Plaintiff reported

4   he was able to follow written and spoken instructions.  (AR 42, 331.)

5   In the fourth functional area of adapting or managing oneself, the ALJ found that Plaintiff

6   only has a mild limitation.  (AR 42.)  Plaintiff has a history of daily methamphetamine and alcohol

7   use for 20 years and reported being clean and sober since July 2020.  (AR 42, 687.)  Plaintiff also

8   reported he can handle stress somewhat unless it piles up.  (AR 42-43, 334.)  Plaintiff also reported

9   he could handle changes in routine, but it depends on the change and time his has to fix his routine.

10  (AR 43, 334.)  The ALJ also noted that Plaintiff had good grooming and reported he was able to

11  perform basic activities of daily living independently.  (AR 43, 688.)

12  The ALJ found that because Plaintiff's medically determinable mental impairments cause

13  no more than "mild" limitation in any of the functional areas, they are non severe citing 20 CFR §

14  416.920a(d)(1)).  (AR 43.)  Section 416.920a(d)(1) provides that "[i]f we rate the degrees of your

15  limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe,

16  unless the evidence otherwise indicates that there is more than a minimal limitation in your ability

17  to do basic work activities."

18  The Court finds that the ALJ cited to substantial evidence to support the finding that Plaintiff

19  had no more than mild limitations in any functional area.

20  **b.     Evaluation of the medical evidence**

21  "When a medical source provides one or more medical opinions or prior administrative

22  medical findings, [the ALJ] will consider those medical opinions or prior administrative medical

23  findings from that medical source together using" the following factors: (1) supportability; (2)

24  consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend

25  to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§

26  404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness

27  of medical opinions and prior administrative medical findings are supportability and consistency.

28  Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).

Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).

The ALJ went on to consider that on October 30, 2020, psychological consultative examiner, G. Seward, Psy.D. opined that Plaintiff had mild to marked mental limitations.  (AR 43, 689-90.)  The ALJ found that Dr. Seward's opinion was not persuasive because it is not supported by examination.  (AR 43.)  The examination showed Plaintiff had cooperative attitude, good eye contact, full orientation, intact intelligence, adequate attention, adequate concentration, adequate fund of knowledge, adequate memory, intact abstraction, intact calculations, intact judgment and insight, anxious mood and affect, mild tremor, no suicidal ideations, intact linear and logical thought process, and unremarkable thought content.  (AR 43, 688-89.)  Here, the ALJ reasonably found that Plaintiff's unremarkable examination findings did not support Dr. Seward's opined limitations.[8]

The ALJ also found that Dr. Seward's opinion is inconsistent with the opinion of the State agency psychological consultants who opined that Plaintiff had no more than mild mental limitations.  (AR 43.)  The ALJ considered that on December 15, 2020, the State agency psychological consultant, Anna Franco, Psy.D., opined that Plaintiff had no more than mild mental

---

[8] Plaintiff argues that mild tremors, shaky speech, and an anxious mood and affect were supportive of Dr. Steward's opinion.  (Mot. at 7.)  However, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).

1  limitations.  (AR 43, 130.)  Further, on May 6, 2021, State agency psychological consultant, S.

2  Khan, MD, affirmed that opinion.  (AR 43, 151.)

3      Although Plaintiff argues that the ALJ erred because the agency consultants found that

4  Chavez applied, the basis of their opinions was that Plaintiff had no formal history of treatment,

5  only some sporadic treatment, and there were no psychiatric holds or decompensations.  In the

6  current application, there was no treatment and the only issue noted was recent sobriety from drug

7  use as of July 2020.  Plaintiff was seen by different providers and denied anxiety and depression

8  and his depression screenings were negative.  The were no allegations of psychological symptoms

9  and no psychiatric diagnosis or referrals.  There were no indications of Plaintiff having difficulty

10  with  following,  understanding,  or  participating  in  discussions.  Plaintiff  reported  auditory

11  hallucinations one time, but they were not endorsed anywhere else, including in his activities of

12  daily living.  There was no formal treatment, and Plaintiff was independent with his activities of

13  daily living.  The consultative examination noted some mild anxiety and tremors, but the rest of the

14  examination was within normal limits with intact memory, attention, concentration and no overt

15  psychotic symptoms.  The adverse mental status findings were not supported by the within normal

16  limits mental examination.  Plaintiff's activities of daily living refer to difficulties with stress and

17  change, but Plaintiff has had no treatment and his mental status examinations overall have been

18  within normal limits and no suicidal ideation or decompensations.  The consultative examination

19  findings were less persuasive, and the agency physicians found that the overall circumstances have

20  not changed and Plaintiff psychiatric symptoms were non severe.  (AR 130, 151.)

21      The ALJ found the opinions persuasive because they were supported by the records from

22  October 6, 2020; February 12, 2021; August 1, 2021; August 13, 2021; November 12, 2021;

23  February 12, 2021; June 18, 2021; November 12, 2021; December 3, 2021; and February 11, 2022;

24  which generally showed normal mood and affect, and cooperative behavior.  (AR 43, 733, 744,

25  785, 790, 795, 800, 837, 932, 945,950.)   In addition, the ALJ found that the State agency opinions

26  are consistent with Plaintiff's activities of daily living and testimony. (AR 43.)  Plaintiff reported

27  he was able to perform basic activities of daily living independently.  (AR 43, 688.)  He also was

28  able to take public transportation, and shop in stores.  (AR 43, 322.)  Further, the ALJ considered

1   that Plaintiff testified that his mental health problems would not prevent him from returning to his

2   past work.  (AR 43, 93.)

3        While Plaintiff argues that as in Angela Louise W. v. Comm'r of Soc. Sec., No. 3:22-CV-

4   5722-DWC, 2023 WL 3052361, at *4 (W.D. Wash. Apr. 24, 2023), the ALJ's failure to draw any

5   connection between the evidence and his conclusion does not craft the logical bridge required by

6   prevailing legal standards.  However, in Angela Louise W, the court noted that the ALJ did not cite to

7   a single medical record to support his conclusion that the plaintiff's doctor had simply credited her

8   subjective complaints to diagnose her.  Id. at *4.  Here, the ALJ noted numerous medical records since

9   the prior adjudication that showed normal mental status examinations and the objective findings are

10  inconsistent with Dr. Seward's opinion that Plaintiff has more than mild mental limitations.

11       The Court finds that the ALJ's finding that Plaintiff's mental impairments are non severe is

12  supported by substantial evidence in the record.

13       **B.    Credibility Finding**

14       Plaintiff also argues that the ALJ erred by failing to account for his limitations consistent

15  with his symptom testimony.  (Mot. at 8.)  Plaintiff contends that the ALJ vaguely asserted that his

16  statements were not supported by the objective medical evidence and other evidence in the record

17  and failed to state a clear and convincing reason to reject his symptom testimony.  Plaintiff asserts

18  that the ALJ then merely goes on to provide a summary of the medical evidence and failed to

19  indicate which of Plaintiff's symptom testimony was not supported by the evidence.  Plaintiff

20  acknowledges that the ALJ stated that Plaintiff was able to ambulate without assistance, denied

21  symptoms, had normal physical examination findings, and reported being independent with

22  activities of daily living, but argues that none of these reasons are proper.  (Id. at 9.)  Plaintiff argues

23  that his condition is such that his symptoms would wax and wane and the ALJ engaged in

24  impermissible cherry picking.  (Id. at 10.)  Finally, Plaintiff argues that the ALJ only cited to a

25  single record in which Plaintiff alleged no problems with his activities of daily living.  Plaintiff

26  contends that the ALJ failed to offer clear and convincing reasons to discount his symptom

27  testimony.  (Id. at 11.)

28       Defendant counters that the ALJ's finding that Plaintiff was not as limited as he claims was

supported by substantial evidence in the record.  Defendant asserts that the ALJ summarized Plaintiff's symptom complaints, including his testimony that he could only walk 500 feet and telling his doctor that it aggravated his back pain and then considered the objective medical evidence. Defendant contends that the ALJ noted that Plaintiff had heart problems and examinations documented trouble breathing, but that he improved after he stopped using methamphetamine, and physical examinations were normal.  Similarly, Defendant states that the ALJ noted that despite Plaintiff's neck and back problems and attendant pain complaints, his physical examination findings showed normal strength, sensation, and gait, although there was some loss of motion in his neck.  (Opp. at 7.)

Further, Defendant argues that the ALJ discussed that Plaintiff's treatment stabilized his heart condition, non-narcotic pain medication helped his neck and back pain, and Plaintiff received physical therapy and occasionally used a back brace reporting it relieved his symptoms which undermines his testimony.  (Id. at 7.)  Defendant also asserts that the ALJ considered Plaintiff stated he was independent with his activities of daily living, and considered Plaintiff's inconsistent statements in which he repeatedly denied that he had pain in his back, neck, joints, or muscles. Defendant contends that Plaintiff's objections are not persuasive and the ALJ's reliance on the contradictory statements and the ALJ's discussion of the medical evidence is a clear and convincing reason to reject Plaintiff's symptoms testimony.  (Id. at 8.)

Defendant asserts that Plaintiff is wrong in arguing that the ALJ cherrypicked evidence. First, Defendant contends that the ALJ noted that Plaintiff consistently denied back pain, neck pain, joint pain, muscle pain, decreased range of motion, and loss of sensation in his legs which undermines his testimony regarding his back and neck problems.  Second, the evidence did not show that Plaintiff's heart condition waxed and waned.  Rather, he consistently had a reduced ejection fraction which eventually led to him receiving a pacemaker.  Defendant argues that the ALJ did not ignore this evidence, but limited Plaintiff to sedentary work with additional exertional and environmental limitations to prevent exacerbation of his heart problems.  Finally, Defendant asserts that Plaintiff has not argued any evidence that his activities of daily living were impacted by his implantation of a pacemaker.  Rather, examinations before the pacemaker implantation

showed normal strength, range of motion, and neurological findings and those same findings continued after the pacemaker implantation.  (Id. at 9.)  Defendant argues that substantial evidence supports that ALJ's credibility finding, and the Court should affirm.  (Id. at 10.)

Plaintiff replies that Defendant mischaracterizes his argument and provided analysis that contradicts the prevailing legal standard.  (Reply at 3-4.)  Plaintiff argues that the prevailing legal standard does not allow discounting subjective symptom testimony solely on the basis of inconsistency with the objective medical evidence.  (Id. at 4.)

       1.   Legal standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the

type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

2.   Discussion

The ALJ considered that Plaintiff alleged an inability to work due to neck fusion, heart failure, depression, and high blood pressure.  He alleged he could only lift and carry 10 pounds, and reported the most he can walk is 500 feet and he can lift up to 5 pounds.  He reported problems remaining seated and getting restless.  (AR 46.)

The ALJ considered Plaintiff's symptom testimony and found that his medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons discussed in the opinion.  (AR 46.)

The ALJ considered that Plaintiffs history of open-heart surgery due to a congenital septal defect as an infant and that he later developed cardiomyopathy with congestive heart failure due to methamphetamine use.  (AR 46, 433, 435.)   In July 2020, an echocardiogram showed sinus tachycardia and left ventricular hypertrophy with repolarization abnormality but no ST-elevation myocardial infarction (STEMI).  (AR 46, 438.) Medical imaging of the chest showed congestive heart failure, patchy right lower lung infiltration, and cardiomegaly. (AR 46, 439.)  Plaintiff was

1   treated conservatively with medication and his condition improved.  (AR 46, 440.)  Plaintiff

2   eventually had a dual chamber ICD placed primarily for prevention on August 2, 2021.  (AR 48,

3   784).  His device as interrogated on November 8, 2021.  (AR 48, 784).  Follow up records showed

4   he reported feeling tired but denied any chest pain, dizziness, palpitations, or syncope.  (AR 48,

5   784.)  Subsequent physical examinations were normal.  (AR 48, 785, 924, 932.)  Plaintiff was

6   continued on medication and Furosemide was added to his medication regimen.  (AR 48, 784, 932.)

7   To accommodate Plaintiff's heart condition, neck and back impairments and obesity, the ALJ

8   limited Plaintiff to a range of sedentary work with lifting and carrying limitations.  (AR 50.)

9        **a.**     **Inconsistency with the medical record**

10       Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

11   corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a

12   claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is

13   not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e

14   will not reject your statements about the intensity and persistence of your pain or other symptoms

15   or about the effect your symptoms have on your ability to work solely because the available

16   objective medical evidence does not substantiate your statements.").  Rather, where a claimant's

17   symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide

18   an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81.  Nevertheless,

19   the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain

20   and its disabling effects."  Id. at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001);

21   SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ went on to discuss Plaintiff's neck and

22   back impairments. (AR 48.)

23       The ALJ found that the record indicates Plaintiff has a history of cervical fusion and

24   laminectomy in 2004.  (AR 48, 423.)  On January 13, 2021; and April 23, 2021, Plaintiff complained

25   of radiating low back pain, intermittent pulling sensation in the lower back, and right sided, lateral

26   buttock, tingling sensation that radiates down the out of the leg.  (AR 48, 934, 701.)  At physical

27   therapy on December 3, 2020, he reported his back pain is exacerbated by standing, walking, or

28   anything in the standing upright position and eased with sitting and occasional pain with lifting and

1   bending.  (AR 48, 717.)   However, the ALJ noted that despite these complaints, examination on

2   October 6, 2020; October 13, 2020; December 2, 2020; January 13, 2021; February 12, 2021; April

3   28, 2021; June 18, 2021; August 2, 2021; November 12, 2021; December 3, 2021; and March 1,

4   2022; generally showed no tenderness to palpation, normal strength, normal sensation, and normal

5   gait.  (AR 48, 602, 699, 703, 733, 744, 800, 924, 932, 936, 945, 950.)   Although the ALJ did note

6   there were less optimal findings of loss of cervical range of motion with some curvature in the spine

7   suspect secondary to cervical fixation, minimal paraspinal muscle spasms to the bilateral lumbar,

8   positive straight leg raising on the right, and decreased sensation in the L5/S1 dermatomes on

9   occasion.  (AR 48, 682, 703, 936.)

10      The ALJ considered that despite Plaintiff's symptom allegations, physical examination

11  generally showed normal strength, sensation, and gait.  (AR 49.)  The ALJ properly considered that

12  Plaintiff's symptom complaints regarding his neck and back pain were inconsistent with the

13  generally normal findings in the medical record.

14      **b.      Inconsistent statements**

15      The ALJ also considered that despite Plaintiff's allegations, he also denied symptoms on the

16  record, including back pain, neck pain, joint pain, muscle pain, decreased range of motion, and loss

17  of sensation in the legs.  (AR 49, 684, 743, 784, 794.)  On October 13, 2020, Plaintiff endorsed an

18  intermittent, mild pulling sensation to his lower back for a couple months which feels like it

19  stretches out and feels better.  He was agreeable to a referral to physical therapy.  (AR 680.)  Plaintiff

20  started physical therapy on December 3, 2020, and complained of low back pain when standing,

21  walking, or standing in an upright position which was eased by sitting.  He had occasional pain with

22  lifting or bending over.  (AR 717.)  No further physical therapy records are in the administrative

23  record.  On April 23, 2021, Plaintiff presented complaining of back pain to the right side that

24  radiates down his right thigh to his right foot.  (AR 934.)  He had no difficulty getting on and off

25  the examination table and ambulated without support.  He could tiptoe and walk on his heels.

26  Strength was 5/5 bilaterally, sensation was intact, and he had a positive straight leg raise on the

27  right.  Plaintiff was diagnosed with lumbago with sciatica, right side and his Acetaminophen was

28  refilled.  (AR 936.)

1    Plaintiff argues that the ALJ cherry picked records to support the credibility finding, however

2    points to no records that undermine the ALJ's findings.   Nor does a review of the medical record

3    support such an allegation.   Rather, Plaintiff's medical records do not demonstrate significant

4    treatment for back or neck pain and he generally denied back pain, neck pain, joint pain, muscle

5    pain, decreased range of motion, and loss of sensation in the legs.   (AR 389, 395, 435, 441, 466,

6    512, 521, 532, 578, 611, 657, 684, 698, 732, 743, 784, 789, 794, 826, 836, 848, 852, 855, 861, 922,

7    944, 949.)   Substantial evidence supports the ALJ's findings that Plaintiff's statements denying

8    back pain, neck pain, joint pain, muscle pain, decreased range of motion, and loss of sensation in

9    the legs to his medical providers are inconsistent with his testimony regarding his back and neck

10   pain.   Robbins, 466 F.3d at 884 (conflicting or inconsistent statements can contribute to an adverse

11   credibility finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on

12   reh'g (Sept. 17, 1997) (credibility determination can be based on conflicts between the claimant's

13   testimony and his own conduct, or on internal contradictions in that testimony).

14        **c.    Conclusion**

15        The ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be

16   supported by the objective medical evidence.   Rollins, 261 F.3d at 857 (citing 20 C.F.R. §

17   404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991).   Here, as discussed above,

18   the ALJ provided a second reason, Plaintiff's inconsistent statements to his medical providers

19   regarding his back and neck pain, to discredit his pain testimony.

20        Plaintiff argues that the ALJ erred in finding that his ability to ambulate without assistance

21   and that he was independent in his basic activities of daily living discredited his testimony.   Even

22   if the ALJ did so err, she has provided other clear and convincing reasons to discredit Plaintiff's

23   testimony regarding the intensity, persistence, and limiting effects of his symptoms.   The Court

24   finds that the ALJ provided clear and convincing reasons that are supported by substantial evidence

25   to discredit Plaintiff's symptom testimony.

26                                          **V.**

27                            **CONCLUSION AND ORDER**

28        In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jason Carl Reither.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **August 5, 2024**

UNITED STATES MAGISTRATE JUDGE

21